UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE MARENTES, individually and on behalf of members of the general public similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KEY ENERGY SERVICES CALIFORNIA, INC., and DOES 1 through 100,<br><br>　　　　　　Defendants. | Case No.: 1:13-cv-02067 - LJO - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 5) |

Plaintiff Rene Marentes ("Plaintiff") seeks a remand of this action to Kern County Superior Court. (Doc. 5.) Defendant Key Energy Services California, Inc. ("Defendant" or "Key") filed its opposition to the motion on January 27, 2014 (Doc. 9), to which Plaintiff filed a reply on February 3, 2014. (Doc. 11). On February 10, 2014, the Court heard the oral arguments of the parties. For the following reasons, Plaintiff's motion to remand is **GRANTED**.

I.　**Factual and Procedural History**

Plaintiff initiated this action by filing a complaint in Kern County Superior Court on May 30, 2013. (Doc. 1 at 18-38.) Plaintiff alleges was employed by Key Energy Services California, Inc., from approximately October 2008 to January 2011. (Doc. 1 at 25, ¶¶ 17-18.) He seeks to bring the action on behalf of himself and all others similarly situated pursuant to California Code of Civil Procedure § 382. (*Id.* at 22, ¶ 12.) Thus, Plaintiff seeks to represent a class defined as: "All current and former hourly-

paid or non-exempt California-based employees who were employed by Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (*Id.* ¶ 13.) Plaintiff contends Defendant "failed to compensate [class members] for all hours worked, missed meal periods and/or rest breaks." (*Id.*, ¶ 19.)

For the alleged wage and hour violations, Plaintiff raises six causes of action against Defendant: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); and (6) violation of California Business & Professions Code §§17200, *et seq.* (unfair competition/unfair business practices). (Doc. 1 at 19.)

On December 19, 2013, Defendant filed a Notice of Removal asserting the Court has jurisdiction pursuant to the Class Action Fairness Act, thereby initiating the action in this Court. (Doc. 1.) Plaintiff filed the motion to remand now pending before the Court on January 13, 2014. (Doc. 5.)

## II.     Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375

F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

### III.    Class Action Fairness Act

The Class Action Fairness Act of 2005 ("CAFA") gives the District Courts original jurisdiction in any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d).  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

The Ninth Circuit has determined "that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego*, 443 F.3d at 685.  The defendant has the burden to demonstrate by a preponderance of the evidence that the amount in controversy requirement is satisfied. *Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975, 967 (9th Cir. 2013).  This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008) (quoting *Sanchez v. Mon. Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis omitted). Thus, Defendant has the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000.

Here, Plaintiff does not dispute the number of putative class members exceeds the jurisdictional requirement, or that the diversity requirement is met.  Rather, Plaintiff contends Defendant failed to satisfy the burden of demonstrating the amount in controversy exceeds $5,000,000.  (Doc. 5 at 6.)

### IV.    Defendant's Calculations in the Notice for Removal

Defendant contends that "the allegations within Plaintiff's Complaint put into controversy an amount in excess of $5 million."  (Doc. 1 at 10.)  Marla Hill, Senior Director of Employee Services (Payroll) for Key Energy Services, reports that "Key has employed at least 1700 individuals in non-

3

exempt positions in California since May 30, 2009, including the plaintiff." (Doc. 1-4, Hill Decl. ¶ 2.) According to Ms. Hill, "these employees collectively worked more than 150,000 work weeks between May 30, 2009 and the present," and had "an average hourly rate of at least $16 per hour." (*Id.* at 2, ¶ 3.) Of the putative class members, Ms. Hill reports that the employment of 460 individuals ended after May 30, 2010. (*Id.*, ¶ 2.) Based upon the information provided by Ms. Hill, Defendant asserts the total amount in controversy is "at least $10,966,400." (Doc. 1 at 13.)

Defendant contends, "Plaintiff repeatedly testified in deposition that he 'never' had the opportunity to take a rest break and that most of the time did not have the opportunity to take meal breaks and/or never took meal breaks." (Doc. 1 at 10, citing Marentes Depo. at 73:16-24, 84:1-11, 102:11-20, 110:21-24, 111:5-25, 113:25-114:4, 161:20-24, and 300:5-12.) Because Plaintiff alleged in that his "claims are typical of all other class members," Defendant argues it is appropriate to assume each putative class member was not provided one meal break per week. (*Id.* at 11.) According to Defendant, assuming each employee was not provided one meal break for each of the 150,000 work weeks "places at least $2,400,000 in controversy" for the meal break claim. (*Id.*, emphasis omitted.) In addition, because Plaintiff testified he was never provided a rest break, Defendant asserts his complaint "puts at issue one rest break premium for <u>every</u> work day." (*Id.* at 12.) Assuming each worker missed two rest breaks per week, Defendant calculated that the rest break claim places at least $4,800,000 in controversy. (*Id.*)

In addition, Defendant observes Plaintiff testified that he and other employees "arrived early to put on their work clothes each day and spent an average 15 minutes per day off-the-clock putting on those work clothes." (Doc. 1 at 10, citing Marentes Depo. at 141:3-142:20.) Accordingly, Defendant calculated that each putative class member spent "10 minutes per day of straight time, off-the-clock," which totals at least $2,000.000 in controversy. (*Id.* at 12.)

Finally, Defendant asserts "Plaintiff's waiting time penalty claim places at least $1,766,440 in controversy." (Doc. 1 at 12.) Defendant observes that Plaintiff alleges: "During the relevant time period, Defendants intentionally and wilfully failed to pay the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Doc. 1 at 34, ¶ 76.) In addition, Plaintiff asserts that "the other class members

4

are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 2013." (*Id.*, ¶ 79.) Based upon these allegations, Defendant calculated the maximum thirty-day penalty for each of the 460 putative class members who left their employment during the class period. (Doc. 1 at 13.) With an average rate of pay of $128 per day, Defendant asserts the waiting time claim places in controversy a total of $1,766,400. (*Id.*)

## V.     Plaintiff's Motion to Remand

According to Plaintiff, "Defendant's calculations rely solely on speculation and unsubstantiated assumptions." (Doc. 5 at 6.) Further, Plaintiff contends the declaration of Ms. Hill "is not competent evidence of the number of class members, work weeks, and average hourly rate" because there is no supporting documentation, and "Ms. Hill fails to explain her methodology for calculating the 'average' of the class members' hourly wage." (*Id.* at 9-10) (citing *Green v. Staples Contract & Commercial, Inc.*, 2008 U.S. Dist. LEXIS 104364 at *13 (C.D. Cal. Dec. 10, 2008); *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist LEXIS 132930 at *16 (E.D. Cal. Sept. 16, 2013)). Plaintiff believes that "Defendant blatantly mischaracterizes [his] testimony in an attempt to forum-shop its way into federal court." (*Id.* at 6.)

Plaintiff observes that throughout his employment with Key, he "held multiple positions, including foamer, working in the yard, working in the blowout prevention shop, being a bulk driver, a bulk cement driver, operating the water vac truck, being a safety observer, a yard hand, and a crane assistant." (Doc. 5 at 7, citing Marentes Depo. at 53:12-25, 55:16-17, 55:22-23.) Plaintiff argues his testimony regarding hours worked should not be attributed to all putative class members simply because Plaintiff asserts his claims are typical. (*Id.* at 11) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Rather, Plaintiff asserts his testimony should be limited to himself and those with similar duties. (*Id.* at 11-12.)

In addition, Plaintiff contends the Defendant's waiting time calculation "must be disregarded" because Defendant calculated the amount in controversy with a 100% violation rate. (Doc. 5 at 15-16) (citing *Loudermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007); *Garibay v. Archstone Communities*, 2013 U.S. App. LEXIS 17923 (9th Cir. 2013)). Plaintiff observes, "Like the defendants

in *Loudermilk* and *Garibay*, Defendant here makes the unsubstantiated assumption that there are 460 putative class members who would assert a claim for wage statement penalties; that each of these putative class members were not timely paid all of their wages upon termination; and that each would be entitled to the maximum of thirty days of wages that California law allows." (*Id.* at 16.)

## VI.  Discussion and Analysis

Opposing remand, Defendant contends the company based its calculations "on extraordinarily conservative assumptions regarding the amount in controversy." (Doc. 9-1 at 6.) Defendant explains:

> Where Plaintiff testified that he was never provided meal breaks in a production position, the removal is based on only one meal break violation per week. Plaintiff testified that he was never provided breaks, but the removal petition is based on only two rest break violations per week. Plaintiff testified that he was underpaid by at least fifteen minutes of overtime every day. The removal petition, by contrast, is based on only ten minutes of straight time per day.

(Doc. 9-1 at 6.) According to Defendant, although "Plaintiff appears to base his arguments on the idea that he does not have claims typical of or common with administrative and mechanic employees," Key satisfies the amount in controversy requirement of $5,000,000 if the administrative and mechanic positions are discounted. (*Id.* at 7.)

Defendant acknowledges "the Court cannot base its jurisdiction on speculation and conjecture," but observes "it is equally true that the removing party is not obligated to 'research, state and prove the plaintiff's claims for damages.'" (Doc. 9-1 at 12) (quoting *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504 at *2 (E.D. Cal. May 1, 2007)). Defendant asserts the declaration from Ms. Hill "is competent evidence upon which the Court may rely," because the information provided is "based upon the human resources information systems maintained by Key of which she has personal knowledge in the course of her job." (*Id.* at 13.) Significantly, however, though a defendant may not be required to prove the plaintiff's claims to establish the Court's jurisdiction, "a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." *Korn*, 536 F. Supp.2d at 1205 (citing *Gaus*, 980 F.2d at 567).

### A.  Meal and rest break claims

When an employer fails to provide a required meal or rest break, it is liable for one additional hour of pay at the aggrieved employee's regular rate of compensation. Cal. Lab. Code § 226.7.

Although Defendant claims Plaintiff testified "that he was never provided meal breaks in a production position" and "was never provided breaks" (Doc. 9-1 at 6), these assertions mischaracterize Plaintiff's deposition testimony. At his deposition, Plaintiff said "most of the time" he and the crane operating crew "ate as [they] worked," but meal breaks were taken if they were not busy. (Marentes Depo. at 84:1-7.) Plaintiff estimated that "80 percent of the time" he recorded having taken a meal break though he had not done so. (*Id.* at 84:9-11.) He explained that every day the workers "wrote down meal breaks at the same time, which is impossible because [they] could never take meal breaks at the same time." (*Id.* at 84:20-22, 85:9-17.) Plaintiff said the workers in the field "were just going from one location to another" and did not have fifteen minute rest periods. (*Id.* at 114:11-17.) On the other hand, Plaintiff testified that when he worked in the shop, there were "set times to take a break." (*Id.* at 111:13-15.) Plaintiff said he took fifteen-minute rest breaks in the morning and afternoon, and a thirty-minute meal break. (*Id.* at 112:21- 113:24) (*see also id.* at 70:3-22, (testifying that when working as a yard hand, he was given "standard breaks" and shop operations would shut down for meals). According to Plaintiff, everyone who worked in the shop took meal and rest breaks together. (*Id.* at 107:3-12.)

Despite Defendant's characterization, Plaintiff did not testify that he *never* received a meal or rest break. To the contrary, Plaintiff asserts he received meal and rest breaks while working in the shop as a yard hand, and that breaks were taken in the field occasionally, though "most of the time" he worked through lunch. (Marentes Depo. at 84:1-7.) Plaintiff's deposition testimony does not support calculations of damages based upon one missed meal break per week and two missed rest periods per week for the entire putative class, because there is no evidence to support this. Plaintiff clearly testified that all working in the shop were given rest and meal breaks at the same time.

In response to Plaintiff's assertion the meal and rest break violations should not be attributed to "all 1,700 putative class members" but rather only those in the field (*see* Doc. 5 at 11-12), Defendant submitted a supplemental declaration from Ms. Hill and deposition testimony from Nicole Gloria.[1] (Doc. 8-1; Doc. 8-2.) According to Defendant, the production positions at Key include: Backhoe

---

[1] Ms. Gloria was the Human Resources Manager, at least as of September 13, 2013. (Doc. 8-2 at 37).

Operator, BOP-Tools Tech, Crane Operator, CTU Operator, Derrickhand, Driller, Drilling Derrickhand, Drilling Floorhand, Drilling Motorhand, Driver Trainee, Electronic Tech 1, Equipment Operator I, Equipment Operator 2, Equipment Operator 3, Equipment Operator 4, Field Trainee, Floorhand, Foam Unit Operator, Helper/Yard/Pipe/Shop, HSE Tech, Hydra Walk System Operator, Hyper Clean Operator, Keyview Field Tech I, Lead Mechanic, Lubrication Tech, Lubrication Tech Asst., Machinist, Maintenance Supp Analyst, Mechanic I, Mechanic 2, Mechanic 3, Parts Person, Pumpkill Operator, Relief Driller, Relief Rig Operator, Rig Operator, Roustabout, Swamper, Trans/Vac Driver, Tube Testing Operator, Warehouse Attendant I, Welder, and Winch Truck Driver. (Doc. 9-1 at 7-8, citing Gloria Depo. at 153-1:145:5) (*see also* Doc. 8-2 at 30-31). Defendant contends, "Distinct from the other positions that operate in various capacities on oil fields, individuals who hold a mechanical operations position may work in a shop in one of Key's yards." (*Id.* at 8, citing Gloria Depo. at 115:13-24, 120:16-23.) In light of this testimony, Ms. Hill asserts she reviewed the employee data and "concluded that Key has employed at least 1700 individual in the non-except production positions listed … excluding the three mechanic positions" of Mechanic 1, Mechanic 2, and Mechanic 3. (Hill Supp. Decl. ¶ 5; Doc. 9-1 at 18.) Therefore, Defendant asserts the amount estimated to be in controversy for the meal and rest break claims remains the same.

Significantly, however, there is no evidence that the Mechanic 1, Mechanic 2, and Mechanic 3 positions are the only positions one may hold while employed in one of Key's shops. In fact, Plaintiff *never* held the position of Mechanic. (Doc. 5-1 at 58) According to Defendant's response to Special Interrogatory No. 11, Plaintiff held the positions of "Trans/Vac Driver, Foam Unit Operator and BOP Tools Technician." (Doc. 8-2 at 27.) Defendant does not claim that Plaintiff *ever* worked as a Mechanic 1, 2 or 3 and does not dispute that Plaintiff was employed to work in the shop. Despite this, Ms. Hill excluded from her calculations *only* those who served in the positions of Mechanic 1, Mechanic 2, or Mechanic 3. Thus, because Plaintiff *was not* employed as a Mechanic but *did* work in the shop—where he received regular meal and rest brakes—it appears clear that Ms. Hill's calculations fail to exclude all employees who are not prospective members of this proposed class. Therefore, the number of members of the prosposed class is unknown and Defendant's claim that the prospective

8

number of class members in 1,700 is unsupported.[2]

Defendant has made other unsupported assumptions to calculate the amount in controversy for the meal and rest break periods, including the assumption that each worker missed a lunch break once a week and two rest periods per week. Defendant relies only upon the declaration of Ms. Hill to identify the number of putative class members, the number of weeks worked, and the average hourly rate. Ms. Hill does not explain why she chose to use the average[3] of the hourly rate, and there is no demonstration that using an average makes sense in this case. For example, there is no showing that there is a normal distribution as to this data point. The Court must conclude that using an average merely ensures that the calculations are inaccurate for virtually every putative class member. It is unclear why the actual figures could not have been used and damage estimates still be achieved expeditiously.

These types of unsupported assumptions were rejected by the Ninth Circuit in *Garibay v. Archstone Communities LLC*, 2013 WL 4517934 at *1 (9th Cir. Aug. 27, 2013). The Court held,

> The only evidence the defendants proffer to support their calculation of the amount in controversy is a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages. Beyond this, the defendants rely on speculative and self-serving assumptions about key unknown variables.

*Id.* Although Plaintiff estimated that he and the other field workers failed to receive rest or meal breaks "80 percent of the time" (Marentes Depo. at 84:9-11), and this testimony could be attributed to each of the field workers, Defendant has not provided any evidence regarding the number of non-exempt field employees or the number of non-exempt shop employees, or even the number of employees—such as Plaintiff—who held positions both in the field and in the shop. In light of evidence to the contrary, the Court cannot presume, as Defendant would have it, that each of the 1,700 putative class members suffered rest and meal break violations. Rather, as in *Garibay*, Defendant fails "to provide any evidence regarding why the assumption that *each employee* missed two rest periods per week was more

---

[2] If there is reason for Ms. Hill to believe that only the three classes of Mechanics should be excluded from the prospective class, she failed to provide any support for this conclusion.

[3] At the hearing, Defendant's counsel denied that the $16 per hour figure was an accurate average, implying—without evidentiary support—that the average was higher. Why then, Ms. Hill would provide a declaration, under penalty of perjury, asserting that the average was "about $16" per hour is not explained. Though Defendant is not obligated to prove Plaintiff's case, it is obligated to provide truthful evidence.

9

appropriate than 'one missed rest period per paycheck or one missed rest period per month.'" *Id.,* 2013 WL 4517934 at *1 (emphasis added).

### B. Plaintiff's off-the-clock claim

According to Defendant, "Plaintiff's off-the-clock claim places at least $2,000,000 in controversy." (Doc. 1 at 12; Doc. 9-1 at 19.) Defendant notes that "Plaintiff testified in deposition that he – and other putative class members – worked at least 15 minutes off-the-clock before work each day putting on their work clothes for which they were not compensated." (Doc. 1 at 12.) Therefore, Defendant assumed "pursuant to Plaintiff's testimony, that the Complaint puts 10 minutes per day of straight-time, off-the-clock work at issue" to calculate the amount in controversy for this claim. (*Id.*)

At his deposition, Plaintiff testified that prior to work each day he had to change his clothes to put on safety boots, T-shirt, coveralls, and hat stored in his locker. (*See* Marentes Depo. at 137:23-139:16.) According to Plaintiff, when he received his training at Key, a supervisor told him to be at work "15 minutes before so you … have enough time to get dressed, have enough time to get your clothes out of the locker if it's locked in the locker because you cannot be late." (*Id*. at 141:13-23.) He testified that he believed all workers arrived early to get dressed, because they had to be ready to meet their supervisors:

> Your supervisor's waiting for you at 10 before 4:00 or 10 before 6:00, and they're already expecting you to be already on your truck and ready to go at exactly 4 o'clock; otherwise, you're late. And especially if you're at the shop, you better be at the shop because the safety meeting starts at 8 o'clock or whatever our time started or 6 o'clock... You had to be at the shop for the safety meeting at that time. If not – they were looking at the clock. If not, you were late. And you had to be dressed with the safety hat and safety boots.

(Marentes Depo. 143:12- 144:1.) Because Plaintiff testified that all workers arrived early to put on safety gear, Plaintiff's testimony provides support for Defendant's calculations assuming that all putative class members arrived early for work. Assuming each worked five days per week[4] at an average[5] rate of $16 per hour, this claim puts in controversy $2,000,000.

### C. Waiting time claim

---

[4] Notably, Defendant does not present evidence to support the assumption that each putative class member worked five-day weeks.
[5] The Court does not ignore as to this claimed violation that Defendant fails to provide any support for the conclusion that an average hourly rate is reasonable to apply in this instance.

10

As an initial matter, it is not clear that Plaintiff has standing to bring a claim for failure to pay timely wages. Plaintiff alleges Key "intentionally and wilfully failed to pay *the other class members* who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Doc. 1 at 34, ¶ 76) (emphasis added). According to Plaintiff, this failure constitutes violations of Cal. Labor Code §§ 201 and 202, and "[t]he other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum. (*Id.*, ¶¶ 78-79, citing Cal. Labor Code § 203.) Thus, Plaintiff asserts Defendant failed to pay the other class members their final wages, but does not make any allegations that Key failed to pay *his* final wages within 72 hours of the end of his employment.

Importantly, a named plaintiff must have the requisite "personal stake in the outcome" and be a member of the class which he seeks to represent. O'Shea v. Littleton, 414 U.S. 488, 494 (1974). "A named plaintiff cannot represent a class alleging ... claims that the named plaintiff does not have standing to raise." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (citing O'Shea, 414 U.S. at 493-94). If Plaintiff was paid his final wages in a timely manner, he cannot state a claim on behalf of those who were not. Consequently, it is not clear that his complaint puts any damages in controversy for Defendant's alleged failure to pay timely final wages.

Even if Plaintiff has standing to pursue this claim, it is not clear that the waiting time claim places $1,689,600 in controversy. To calculate this amount, Defendant assumed each of the 440 individuals who left their employment during the class period was entitled to the maximum thirty-day penalty. (Doc. 9 at 19.) However, the Ninth Circuit appears to have disapproved of the use of a 100% violation rate without evidentiary support. In *Garibay*, the Court observed:

> Garibay also alleges violations of Cal. Labor Code § 203, which provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. Archstone assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion.

*Garibay*, 2013 WL 4517934 at *1. Though the Court did not use the magic language "100% violation rate," the Court makes clear that a removing defendant *must* have evidence to support the assumptions made. This is consistent with the Court's ruling in *Gaus*, 980 F.2d at 567, which held that a removing defendant must set forth the underlying facts supporting its claim that the amount in controversy

11

exceeds the statutory minimum.

On the other hand, Plaintiff alleges Key failed to pay the employees "their wages, earned and unpaid, within seventy-two (72) hours" of the end of their employment. (Doc. 1 at 34.) Defendant argues its calculations "are not premised on the notion that Key delivered final paychecks late," but rather "that the putative class members are owed as of yet unpaid off-the-clock wages and meal and rest period premium wages for meal periods not provided and rest breaks not authorized and permitted in conformity with California law." (Doc. 8 at 20.) Defendant asserts that the full thirty days of waiting time penalties should be used, because any of "the[] unpaid wages are *still owed today*." (*Id.*, emphasis in original.) At the hearing, Plaintiff's counsel argued that whether these penalties could be awarded depends upon whether the underlying violation is proven and, thus, the penalties are too speculative to be considered. However, at this stage, the question is not what will be proven ultimately but whether these penalties have been placed at issue in Plaintiff's complaint. The Court finds that they were.

Because these wages are alleged to have not been paid, the full thirty-days may be used for each of the putative class members. Thus, and assuming Plaintiff has standing for this claim, based upon the factual allegations in his complaint, it appears there is $1,689,600 in controversy for the waiting time claim.

**D.** *Campbell*, *Korn* **and** *Bieck* **do not require a different result**

In *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 647-648 (9th Cir. 2012), a group of truck drivers filed a class action lawsuit alleging the employer failed to pay premium pay for filing to provide rest and meal breaks and other Labor Code violations. In its removal, the defendant calculated the amount in controversy first by assuming class members had not ever been provided a meal or rest break and also by assuming they were denied only one meal and one rest break per week. *Id*. at 648. Under either calculation, the $5 million minimum was met. *Id*. These assumptions were supported by the allegations of the complaint that the employer "regularly and consistently" denied these breaks to the named plaintiffs and the class members. *Id*. at 649. The complaint alleged also that the plaintiffs' claims were typical of all of the other class members. *Id*. Also, the assumptions in the calculations were supported by the testimony of the plaintiff who asserted that they "never" were provided the breaks and neither were any of the other class members. *Id*. As a result, the Court determined the

1  CAFA minimum was met because the calculation based upon the assumption that all class members
2  were denied breaks was supported by evidence and the complaint. *Id*.

3  In *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1202 (E.D. Cal. 2008), the plaintiff
4  asserted that the proposed class was made up of customers who made purchases using a credit card and,
5  when doing so, were required to provide telephone numbers and addresses (which were recorded by the
6  defendant) and those who used credit cards and whose information was recorded on a preprinted credit
7  card form. *Id*. at 1202. The complaint alleged that the maximum statutory penalty for the class
8  members was $1,000 per violation. *Id*. In its removal, the defendant provided evidence that it
9  processed more than 5,000 credit card transactions in the year before. *Id.* On this basis, the defendant
10 claims the CAFA minimum was met. *Id*. Seeking remand, the plaintiff argued that there was no way to
11 know that the maximum statutory penalty would be awarded. *Id.* at 1205. In rejecting this argument,
12 the Court held the measure, for purposes of CAFA, is not what the class members will recover but the
13 amount that has been put in controversy by the complaint. *Id*. Because there was no evidence that the
14 maximum penalty would not be awarded, the Court concluded the complaint placed at least $5 million
15 in controversy. *Id*. at 1205-1206.

16 In *Bicek v. C & S Wholesale Grocers, Inc.*, 2013 WL 4009239 (E.D. Cal. Aug. 5, 2013), the
17 plaintiff filed a class action lawsuit in which he alleged the amount in controversy did not exceed $5
18 million. Defendants calculated that the first cause of action exceeded the CAFA minimum based upon
19 testimony from the named plaintiff that he worked between 12 and 13 hours per day in 2007, 12 and 14
20 hours per day during 2008 and 2009, and 15 to 18 hours per day during 2010 and 2011 and that he
21 worked four-day work weeks during this time period. *Id*. at 8. The plaintiff testified further that others
22 on his same shift worked the same hours during this time period but he did not know the hours others
23 worked on different shifts. *Id*. On the other hand, he admitted that his shift could not start until the
24 shift before his finished and on this basis, concluded the other shift workers in 2009, 2010 and 2011
25 worked the long hours just like him. *Id.* The Court found that this evidence was sufficient to support
26 the assumption that those working at the defendant's other plants worked the same hours as plaintiff,
27 for purposes of the CAFA calculation.
28

Defendant argues that *Campbell, Korn,* and *Bicek*, stand for the proposition that because a plaintiff's claims must be typical of all the class members, his testimony must be attributed to all class members. (Doc. 8 at 15-16.) However, in each of the actions, the defendant provided the court with evidence sufficient to support its assertion that the amount in controversy was satisfied. Where a defendant relies upon "speculative and self-serving assumptions about key unknown variables," as Defendant did in this action, the Ninth Circuit has determined it is an error to find the defendant has carried its burden to demonstrate the amount in controversy. *See Garibay*, 2013 WL 4517934 at *1. Different from the cases cited, here Defendant fails to provide the factual underpinning for the assumption that meal and rest break violations occurred one time per week for each non-exempt employee and fails to provide evidence it excluded from the numbers all employees who worked in the shop and who are not prospective members of the meal and rest break class. Likewise, Defendant relies upon approximate numbers and averages without explaining why they yield reliable results.

By applying assumptions and failing to provide supporting evidence, Defendant's calculations are speculative and lack the summary judgment-type evidence contemplated to evaluate removal jurisdiction. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004).

## VII.    Conclusion and Order

Because Key Energy fails to provide facts supporting the calculations, Defendant has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000. Consequently, the Court cannot find it has jurisdiction pursuant to the Class Action Fairness Act. However, as the Ninth Circuit explained in *Garibay*, if Defendant "later discovers evidence that the jurisdictional bar is met, it may once again attempt to remove this case to federal court." *Garibay*, 2013 WL 4517934 at *2 (citing *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121 (9th Cir. 2013)).

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's motion to remand (Doc. 5) is **GRANTED**;

2.    This matter is **REMANDED** to Kern County Superior Court; and

///

///

3. The Clerk of Court is **DIRECTED** to close this matter.

IT IS SO ORDERED.

Dated: **February 28, 2014**                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE